IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| OSAMA ABU IRSHAID, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES CITIZENSHIP ) <br> AND IMMIGRATION SERVICES, ) <br> ) <br> U.S. DEPARTMENT OF ) <br> HOMELAND SECURITY, ) <br> ) <br> KIMBERLY J. ZANOTTI, Field Office Director, ) <br> USCIS Washington Field Office, ) <br> ) <br> SARAH TAYLOR, District Director ) <br> USCIS Washington District Office ) <br> ) <br> LORI SCIALABBA, Acting Director ) <br> U.S. Citizenship and Immigration Services, ) <br> ) <br> JOHN KELLY, Secretary ) <br> U.S. Department of Homeland Security, ) <br> ) <br> ) <br> Defendants. ) <br> ) | Case No._____ |

**PETITION FOR REVIEW OF DENIAL OF APPLICATION FOR
NATURALIZATION PURSUANT TO 8 U.S.C. §1421(c)
AND REQUEST FOR DE NOVO HEARING**

1. This is an action for *de novo* review of eligibility for naturalization to United States citizenship under Section 310(c) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1421(c), as well as attorneys' fees and costs pursuant to 28 U.S.C. § 2412.

1

2. This petition is brought more than ten years after Petitioner filed his application for naturalization with United States Citizenship and Immigration Services in 2006. Petitioner's application remained pending for nine years without explanation, during which time USCIS interviewed Petitioner three times, in 2008, 2010, and 2015. Ultimately, USCIS erroneously denied Petitioner's application on August 10, 2015, and affirmed the erroneous denial on December 2, 2016.

## I. JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 8 U.S.C. § 1421(c), which confers district courts with the authority to conduct a de novo hearing on administratively-denied applications for naturalization. The petition is timely filed within 120 days of Defendants' final decision denying his application for naturalization. *See* 8 C.F.R. §§ 310.5(b); 336.9(b).

4. Venue is proper in this district pursuant to 8 U.S.C. § 1421(c) ("A person whose application for naturalization . . . is denied . . . may seek review of such denial before the United States district court for the district in which such person resides") and 28 U.S.C. §§ 1391(b) and 1391(e) because (1) Petitioner resides within the Eastern District of Virginia; (2) a substantial part of the events giving rise to the claims occurred in this District; and (3) Petitioner sues Defendants in their official capacities.

5. In connection with the claim for attorneys' fees and costs, under the Equal Access to Justice Act, 28 U.S.C. § 2412, Petitioner seeks to recover costs and attorneys' fees incurred in bringing this action.

6. All conditions precedent to bringing this lawsuit have been satisfied, in that all administrative appeals and avenues of relief have been exhausted.

## II. PARTIES

7. Petitioner OSAMA ABU IRSHAID is a native and citizen of Jordan, who was granted United States lawful permanent resident status in 2002 as the spouse of a U.S. citizen. He is a resident of Springfield, Virginia, and his alien registration number is A 77658396.

8. Defendant UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES ("USCIS") is a division of the U.S. Department of Homeland Security. It is the federal agency responsible for the adjudication of naturalization applications, and is the entity designated as the respondent for actions challenging citizenship denials pursuant to 8 U.S.C. § 1421(c). *See* 8 C.F.R. § 336.9(b) ("The petition for review must be brought against USCIS…").

9. Defendant U.S. DEPARTMENT OF HOMELAND SECURITY ("DHS") is the cabinet-level federal parent agency of USCIS, and the agency responsible for the administration and enforcement of the country's immigration and naturalization laws.

10. Defendant KIMBERLY J. ZANOTTI is the Field Office Director of the USCIS Washington District Office located in Fairfax, Virginia. The USCIS Washington District Office is responsible for, *inter alia*, adjudicating N-400 applications for naturalization filed by applicants within its jurisdiction, including the Petitioner. She is sued in her official capacity.

11. Defendant SARAH TAYLOR is the Director of the Washington District Office of USCIS, and is the official in charge of the USCIS office where Petitioner's administrative hearing was held pursuant to 8 C.F.R. § 336.2. She is sued in her official capacity.

12. Defendant LORI SCIALABBA is the Acting Director of U.S. Citizenship and

Immigration Services, the agency responsible for adjudicating Petitioner's application for naturalization. As the Acting Director of USCIS, she has the final authority within USCIS for all decisions of his agency. She is sued in her official capacity.

13. Defendant JOHN KELLY is the Secretary of DHS, and maintains ultimate responsibility for overseeing the actions of USCIS officials. He is sued in his official capacity.

## IV. FACTUAL AND LEGAL BACKGROUND

### A. LEGAL FRAMEWORK FOR NATURALIZATION

14. To become a U.S. citizen through naturalization, an applicant must satisfy a number of statutorily-established prerequisites. He must have continuously resided in the U.S. for a period of five years, and have been physically present in the U.S. for at least half of that time. INA § 316; 8 U.S.C. § 1427. He must have been "a person of good moral character" for the five year period before the filing of the naturalization petition, *id.*, and demonstrate an understanding of the English language, and the history, principles, and form of government of the United States. INA § 312; 8 U.S.C. § 1423. Further, he must not fall into any of the categories described in INA § 313; 8 U.S.C. § 1424(a) (listing categories such as membership in the Communist Party or those who advocate the violent overthrow of the U.S. government). In addition, an applicant must have "been lawfully admitted to the United States for permanent residence in accordance with all applicable provisions" of the immigration laws. INA § 318; 8 U.S.C. § 1429. If an applicant satisfies the statutory requirements for naturalization, USCIS "shall grant the application." 8 C.F.R. § 335.3(a).

15. Applicants for naturalization initiate the process by submitting USCIS's Form N-400. After the application is submitted, the applicant must attend a naturalization examination, (*i.e.*,

interview) at the local USCIS field office with jurisdiction over the place of the applicant's residence. INA § 335; 8 U.S.C. § 1446.

16. If the application is denied, the applicant may request administrative review of the denial by filing Form N-336, and attending an additional hearing conducted by an immigration officer. INA § 336; 8 U.S.C. § 1447. USCIS's decision on the Form N-336 is the final administrative decision on the application for naturalization.

17. If USCIS's final decision is to deny naturalization, the applicant may seek *de novo* review of the denial in the U.S. district court with jurisdiction over the applicant's place of residence. INA § 310(c); 8 U.S.C. § 1421(c). In such a proceeding, the district court "shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application." *Id.*

### B. FACTUAL BACKGROUND

18. Petitioner entered the United States in 1996 as nonimmigrant journalist and married a U.S. citizen in 1999. On May 30, 2000, Petitioner applied, through counsel, to adjust to lawful permanent resident status by submitting a Form I-485 Application to Register Permanent Residence. Where the I-485 Form required the applicant to list present or past memberships or affiliations with organizations, associations, and other similar groups, Petitioner listed none.

19. The application for adjustment of status also required the submission of a Biographic Information form, in which the applicant is asked to list his present employer. Because Petitioner was not employed at the time he submitted his application, he listed no employer. Petitioner signed the application and attested to the accuracy of the statements contained

therein at the time he submitted it, prior to May 30, 2000, the day on which USCIS received it.

20. After he submitted his application in May 2000, Petitioner began working for the American Muslim Society as an outreach coordinator in or about June 2000. As outreach coordinator, Petitioner would reach out to organizational chapters, coordinate with local chapters for events, and assist them with fundraising.

21. Petitioner was interviewed by an officer of USCIS in connection with his application for adjustment of status on August 29, 2001. Petitioner appeared at the interview with his wife and daughter, but without counsel. During the interview, the officer focused her questioning on Petitioner's marriage, which served as the basis for the adjustment of status.

22. She did not question him on any matters related to his group memberships or his employment. There is no indication that the interviewer reviewed the entire form with Petitioner under oath, or that Petitioner otherwise attested to the continuing validity of the previously submitted information.[1] His application for adjustment of status was ultimately granted on February 13, 2002.

23. After his application for adjustment of status was approved, Petitioner joined Islamic Association of Palestine as a deputy on the board of directors in or about July 2002.

24. Petitioner, having been admitted for permanent residence as the spouse of a U.S. citizen, and having satisfied the three-year residency requirement and all other eligibility

---

[1] Unlike the Form N-400 Application for Naturalization, Petitioner's Form I-485 did not contain an additional signature section to be completed at the interview. The Form I-485 is required to be signed at the time of submission, not at the time of the interview, and Petitioner's signature on the form is undated.

requirements, filed an N-400 application, through counsel, for naturalization in the Washington District with USCIS on June 30, 2006.

25. On his naturalization application, Petitioner listed his employment at American Muslim Society, which began in or about June 2000 (after he submitted his application for adjustment of status). He also listed his group membership with IAP, which began in or about July 2002, and an affiliation with United Association for Studies and Research that began in or about January 2000.

26. Petitioner later explained in an interview with USCIS that he was never actually affiliated with the organization, and that he listed it on his naturalization application only because he had previously been incorrectly linked with the organization in television and print media.

27. Petitioner's application then remained pending with USCIS for over nine years, and USCIS interviewed Petitioner on his application three times: on October 3, 2008; March 19, 2010; and June 17, 2015. Due to the passage of time, Petitioner amended his application at each interview to reflect new group memberships and associations, as well as other biographic information that had changed.

28. At his last interview on June 17, 2015, the interviewing officer questioned Petitioner on the beginning of his involvement with IAP. Petitioner truthfully stated that he first came to know of IAP in the late 1990s, and during that time he attended several events hosted by the organization.

29. USCIS alleged that Petitioner's attendance at events hosted by IAP amounted to a group membership or affiliation predating his application for adjustment of status, but Petitioner consistently maintained in his interviews that he was not a member of the organization, nor

affiliated with it, until around July 2002 when he joined the organization as a deputy on the board of directors.

30. On July 11, 2015, the Defendant USCIS erroneously denied Petitioner's Application for Naturalization, alleging that Petitioner was not eligible for naturalization, because he had not been lawfully admitted for permanent residence.

31. Defendant USCIS concluded that Petitioner's adjustment of status to lawful permanent resident status was not in compliance with Immigration and Nationality Act § 245(a), 8 U.S.C. § 1255(a), which sets forth the eligibility requirements for adjustment of status and delegates to the Attorney General[2] the discretion to make the ultimate determination as to that benefit, "under such regulations as he may prescribe." INA § 245(a), 8 U.S.C. § 1255(a).

32. Defendant USCIS argued that, because Petitioner allegedly failed to disclose group membership or affiliation with IAP and UASR at the time of adjustment of status, his adjustment of status violated 8 CFR § 103.2(a)(2), which requires that an applicant for an immigration benefit certify that all information is true and correct.

33. Therefore, according to Defendant USCIS, Petitioner's adjustment of status was unlawful and he was not "lawfully admitted for permanent residence" as required by 8 U.S.C. § 1429

---

[2] At the time of Petitioner's application for adjustment of status, 8 U.S.C. § 1255(a) delegated decision making authority to the Attorney General. However, pursuant to 8 U.S.C. § 1103(a), the Secretary of Homeland Security is now charged with the administration and enforcement of immigration laws. Therefore, as of March 1, 2003, any reference to the Attorney General in provisions of the Immigration and Nationality Act describing functions that were transferred from the Attorney General to the Department of Homeland Security by the Homeland Security Act of 2002, Title XV, § 1517, "shall be deemed to refer to the Secretary" of Homeland Security. See 6 U.S.C. § 557 (2003) (codifying HSA, Title XV, § 1517).

("[N]o person shall be naturalized unless he has been lawfully admitted to the United States for permanent residence in accordance with all applicable provisions of this Act.").

34. USCIS argued that Petitioner's failure to disclose affiliation or group membership with IAP and UASR cut off a material line of questioning directly related to determining his eligibility to adjust status, *i.e.*, whether he were admissible to the United States and whether he merited a favorable exercise of discretion.

35. USCIS alleged that this group affiliation was material because IAP and UASR were named as defendants in a civil lawsuit filed on May 12, 2000 (*Boim v Quranic Literacy Institute, Et Al)*, in which the parents of a U.S. citizen murdered in Israel by Hamas, sued United States-based organizations and the alleged U.S.-based military leader of Hamas, alleging conspiracy to provide and provisions of material support to Hamas.

36. Therefore, USCIS alleged that the Form I-485 contained a material misrepresentation and thus was "not true and correct" and also did not comply with 8 C.F.R. § 103.2(a)(2).

37. Because Defendant USCIS concluded that Petitioner had not been lawfully admitted for permanent residence, it denied his application for naturalization. On September 11, 2015, Petitioner submitted an N-336 Request for a Hearing on a Decision in Naturalization Proceedings.

38. On December 2, 2016, Defendant USCIS affirmed its erroneous decision with respect to Petitioner's affiliation with IAP, but correctly found that he had no affiliation with UASR.

**V. CLAIM FOR RELIEF:** *Request for de novo hearing pursuant to 8 U.S.C. § 1421(c)*

39. Petitioner re-alleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 38 as if fully set forth herein.

9

40. Petitioner has satisfied all of the statutory requirements for naturalization. He was lawfully admitted for permanent residence in 2002, in compliance with the applicable statutory and regulatory framework. He satisfies the physical presence requirement, and is and has been a person of good moral character during the relevant statutory period.

41. Defendant USCIS's stated reasons for denial of Petitioner's application for naturalization are without merit.

42. Petitioner has not misrepresented any material facts to USCIS. At the time he submitted his application for adjustment of status, he was not affiliated with or a member of any group, nor was he employed by any organization.

43. When he appeared at his interview *pro se*, the interviewing USCIS officer did not ask him to update his application form, or ask him any questions related to his employment or group memberships. Petitioner was not affiliated with IAP until around July 2002, after the grant of his adjustment of status. His attendance at events held by IAP did not constitute an affiliation with the organization.

44. Even if Petitioner's failure to characterize his extremely limited involvement with IAP at the time of adjustment of status as a group affiliation could be construed as a misrepresentation, it was not material to the question of whether discretion should be granted in favor of Petitioner, and therefore did not cut off a relevant line of questioning.

45. Pursuant to 8 C.F.R. § 336.9(d), Petitioner states that USCIS's final decision denying Petitioner's naturalization has not been upheld in any prior judicial proceeding.

46. Petitioner respectfully requests that this Court conduct a plenary *de novo* hearing on his naturalization application pursuant to INA § 310(c), 8 U.S.C. § 1421(c). As Petitioner has

satisfied all the eligibility requirements for naturalization, he asks that the Court grant his application following such hearing.

## VI. ATTORNEY'S FEES

47. As a result of Defendants' unlawful actions, Petitioner was required to retain counsel and pay counsel reasonable fees and expenses. Because Defendants were not substantially justified in pursuing their actions, Petitioner is entitled to recover legal fees and all costs and expenses under the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412.

## VII. PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court conduct a plenary hearing *de novo* on Petitioner's naturalization application pursuant to INA § 310(c), 8 U.S.C. § 1421(c); order production of any and all documents relied upon in denying Petitioner's application for naturalization; grant Petitioner naturalization following such hearing; award Petitioner costs and attorney's fees; and grant such further relief as the Court deems just and proper.

Respectfully Submitted,

/s/ Ashraf Nubani

Ashraf Nubani, Esq. VA#43595
AWN POINT LAW, PLLC
2677 Prosperity Avenue
Suite 320
Fairfax, VA 22031
Tel: (703) 658-5151
Fax: (703) 658-9200
awn@awnpointlaw.com
*Counsel for Plaintiffs*

/s/ Charles D. Swift

Charles D. Swift

Constitutional Law Center for Muslims in America
833 East Arapaho Road
Suite 102
Richardson, Texas 75081
(972) 914-2507
cswift@clcma.org
*Counsel for Plaintiffs*
*Pro Hac Vice Application Pending*