# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Alexandria Division

| | |
|---|---|
| OSAMA ABU IRSHAID, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. 1:17cv402 |
| | ) |
| UNITED STATES CITIZENSHIP & | ) |
| IMMIGRATION SERVICES, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 7(F)(1), defendants, through their undersigned counsel, hereby respectfully submit the instant reply memorandum of law in support of their motion for summary judgment in the above-captioned action.

## INTRODUCTION

As United States Citizenship and Immigration Services ("USCIS") provided in its final administrative decision and explained in its opening memorandum, the gravamen of this civil action, and plaintiff Osama Abu Irshaid's entitlement to naturalization, is plaintiff's connections to and involvement with an organization known as the Islamic Association for Palestine ("IAP"). Once confronted with a motion for summary judgment, Supreme Court authority and the Local Rules of this Court required plaintiff both to list those facts identified by USCIS that he disputed and to provide evidence supporting such a dispute. Applying those axiomatic principles here, plaintiff – through his silence – has appropriately admitted several of the facts that USCIS identified. Amongst those facts are that several federal courts have acknowledged the existence of significant evidence that IAP was, in essence, an arm of Hamas, a designated terrorist

organization, including that IAP "held annual conferences or conventions, invited pro-Hamas speakers to present at those conferences or conventions, and paid for their travel expenses." Boim v. Quranic Literacy Inst., 340 F. Supp. 2d 885, 908-13 (N.D. Ill. 2004), aff'd sub nom, Boim v. Holy Land Found., 549 F.3d 685 (7th Cir. 2008). And as the certified transcript of plaintiff's sworn interview before USCIS now confirms, plaintiff testified that – as early as 1998 – he used "to help with [IAP's] events." Transcript (Dkt. No. 24), at 92; see also id. at 132-33.

The question before this Court is thus a legal one: whether this type of assistance to IAP on plaintiff's part meets the appropriate legal definition of "affiliation," and if so, whether "affiliation" with a group such as IAP was something that might have the "natural tendency" to influence the former INS's decision on whether to exercise its discretion to adjust plaintiff's status to that of lawful permanent resident or "shut off a line of inquiry" relevant to that adjudicative process. Both of these questions must be answered in the affirmative. *First*, this Court should reject plaintiff's attempt to utilize an outdated Supreme Court construction of the statutory definition for the term "affiliation." As the Board of Immigration Appeals has held, Congress abrogated the Supreme Court's legal construction of the term when it promulgated the Immigration and Nationality Act, which included a substantive amendment to the pertinent statutory language that significantly broadened the meaning of the term to encompass any act of "support" to a given organization. *Second*, there can be little doubt that – at the very least – the INS would have been influenced in its decisionmaking on plaintiff's adjustment application by his affiliation with a group such an IAP. As such, this Court should enter summary judgment in favor of USCIS.

**ARGUMENT**

As provided in USCIS's opening memorandum, the Fourth Circuit has articulated a two-part inquiry to determine whether an alien – for purposes of a subsequent application for naturalization – was "lawfully admitted for permanent residence," despite the fact that his adjustment application was approved. See Injeti v. USCIS, 737 F.3d 311, 316-18 (4th Cir. 2013). *First*, a court asks whether the alien's adjustment application (or associated statements) contain a misrepresentation. See id. at 316. If so, *second*, the Court asks whether that misrepresentation was "material" to the adjudication of the adjustment application. See id. at 316-18. As the Supreme Court has noted, it is the plaintiff that bears the burden to establish his entitlement to naturalization "in every respect," INS v. Pangilinan, 486 U.S. 875, 886 (1988), which would include a demonstration that he was "lawfully admitted for permanent residence."

Based on his own sworn testimony, and the evidence that other tribunals have uncovered about the unsavory activities of IAP, plaintiff simply cannot meet this burden.

**I. PLAINTIFF MISREPRESENTED HIS "AFFILIATION" WITH THE ISLAMIC ASSOCIATION FOR PALESTINE**

The first element of the Injeti analysis asks whether plaintiff made a misrepresentation to USCIS during the process through which he applied to adjust his status to lawful permanent resident. See Injeti, 737 F.3d at 316. USCIS's administrative denial of plaintiff's naturalization application, and the instant motion, focus upon plaintiff's failure to identify the IAP as an organization with which he was "affiliated," either in his May 2000 written application, or during a subsequent August 2001 interview with INS personnel.[1] As plaintiff correctly concedes,

---

[1]Plaintiff provides – in his disputed fact statement – that the INS official that conducted this interview "did not ask [him] to update his application to reflect any new group memberships or employment," and that at the interview he did not "attest[] to the continuing validity of the previously submitted information." Opp. Mem., at 16. Neither of these statements can create a genuine issue of fact, for two reasons. First, the only support that plaintiff provides for these

whether this omission was intentional or simply a mistake is not of moment. Opp. Mem. (Dkt. No. 19), at 9. All that matters is whether plaintiff was, in actuality, "affiliated" with IAP in either May 2000 or August 2001.

Each and every material fact about the extent and nature of plaintiff's involvement with (and the assistance that he provided to) IAP during this particular time period, drawn exclusively from plaintiff's own sworn testimony, is undisputed. And thus, once distilled to its essence, the crux of this civil action is the proper legal construction of the term "affiliation." Under any reasonable legal construction of the term – *i.e.*, whether this Court elects to construe it as a statutory term of art or through generic dictionary definitions – there can be little doubt that plaintiff was, at the very least, "affiliated" with IAP during the pertinent time period.

> **A.** **PLAINTIFF WAS "AFFILIATED" WITH THE ISLAMIC ASSOCIATION FOR PALESTINE UNDER EITHER THE STATUTORY OR GENERIC DEFINITION OF THE TERM**

In both its administrative decision and its opening memorandum in this Court, Mem., at 21, USCIS construed "affiliation" in its own adjustment of status form consistent with the generic dictionary definition of the term. See, e.g., Mallard v. United States Dist. Ct., 490 U.S. 296, 301 (1989) (noting the use of dictionaries in the legal interpretation of terms); Blakely v. Wards, 738 F.3d 607, 611 (4th Cir. 2013) (en banc). Although plaintiff took no issue with that construction during administrative proceedings, he now contends that this Court should instead construe "affiliated" as a statutory term of art, utilizing the definition of the term found in the

---

statements are the allegations of his complaint, and it is well-settled that "[a]llegations contained in a complaint are not evidence, and cannot defeat a motion for summary judgment." Cambridge Capital Grp. v. Pill, 20 Fed. Appx. 121, 124-25 (4th Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Second, plaintiff's statement is directly at odds with the actual evidence. Not only does the adjustment of status application form contain additional marks and corrections from the interviewing INS official, but plaintiff himself (along with his wife) signed the form on the date of the August 2011 interview (albeit upside-down). Mem., ex.A, at 5.

Immigration and Nationality Act ("INA"), see 8 U.S.C. § 1101(e)(2), and – according to plaintiff – "the Supreme Court's interpretation of that definition" in Bridges v. Wixon, 326 U.S. 135 (1945). Opp. Mem., at 10-11; 17. Plaintiff's resort to the statutory definition of "affiliated" and the Bridges Court's explication of that definition is misplaced. Under either legal construction of the term, however, plaintiff was "affiliated" with IAP at the relevant time, and thus his adjustment of status application contained a misrepresentation.

Before proceeding further, it is important first to provide a threshold understanding of the statutory definition of "affiliated" and Bridges – the latter of which was decided in 1945, seven years *before* Congress promulgated the modern INA. The applicable federal statutory provisions at the time rendered an alien deportable if they were (at a particular time) "affiliated" with the Communist Party, and provided a definition of the term "affiliated." See Bridges, 326 U.S. at 139-41 (quoting 8 U.S.C. § 137(f) (1940)). In Bridges, the Supreme Court considered whether the United States had identified sufficient evidence to deport a particular alien based on his purported "affiliation" with the Communist Party. The Court's opinion on this issue is – in all candor – rather difficult to discern with any clarity, and vacillates between various different constructions of the then-applicable statutory language. See id. at 141-45. In this respect, the Bridges Court noted that "affiliation" "imports . . . less than membership but more than sympathy," and appeared to approve of the notion that "[a]ssisting in the enterprises of the organization, securing members for it, taking part in meetings organized and directed by or on behalf of the organization, would all tend to show affiliation." Id. at 144.[2] But the Court also appeared to approve of a prior Second Circuit opinion that held that the statutory definition

---

[2] As the Court would explain, its concern in Bridges was the "broad sweep which was given the term in its application to the facts of [that] case"; *i.e.*, to the particular alien's involvement with the Communist Party. See Bridges, 326 U.S. at 144-46.

required a mutual recognition between the alien and the Communist Party; *i.e.*, "a working alliance to bring the program to fruition." Id. at 142-44 (quoting United States *ex rel.* Kettunen v. Reimer, 79 F.2d 315, 317 (2d Cir. 1935)). Plaintiff relies on this latter interpretation here; *i.e.*, the putative need for the alien and organization to have a "working alliance" or "mutual recognition," which plaintiff maintains is missing from his sworn statements. Opp. Mem., at 11.

Plaintiff's attempt to incorporated both the statutory definition of the term "affiliated" and the Supreme Court's judicial gloss on that definition in Bridges is misplaced for two reasons. First, USCIS construed its own use of the term on its own application form in a broader fashion, and that construction is entitled to deference in this Court. Second, despite plaintiff's conclusory statement to the contrary, Congress substantively amended the statutory definition of "affiliated" in the INA, which – as the Board of Immigration Appeals ("BIA") has held – abrogated the interpretation provided by the Supreme Court in Bridges.

1. As stated earlier, USCIS – in its final administrative decision here – construed the term "affiliated" in its own adjustment of status application form through the use of generic dictionary definitions and thus in a broader fashion than did the Supreme Court in Bridges. As the Supreme Court has now repeatedly held, an agency's interpretation of its own *regulatory* language is entitled to "controlling weight unless it is plainly erroneous or inconsistent with the regulation." Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 413-14 (1945); see also Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994) (holding that courts must accord "substantial deference to [the] agency's interpretation of its own regulations"); O'Shannessy v. Doll, 566 F. Supp. 2d 486, 490 (E.D. Va. 2008). This authority is premised on the notion that because the agency in question drafts the regulatory language at issue, it is in a unique position to understand what its own promulgated words mean. See, e.g., Martin v. Occupational Safety & Health Rev.

Comm'n, 499 U.S. 144, 152 (1991).  There is no reason that this same authority should not equally apply to the legal construction of terms utilized within an application form created by an agency.  See Clason v. Johanns, 438 F.3d 868, 871 (8th Cir. 2006) (affording Seminole Rock deference to the United States Department of Agriculture's interpretation of language utilized on a form created by the agency); see also 8 C.F.R. § 103.2(a)(1).

There also can be little doubt that USCIS's construction fits easily into these wide deferential parameters.  Nothing in the nature of the term "affiliated" clearly contradicts USCIS's interpretation; indeed, USCIS simply utilized the dictionary definition of the term itself.  And just as importantly, plaintiff neglects the significant context out of which this interpretative exercise arises – an alien's application for adjustment of status to that of lawful permanent resident.  In this respect, the term "affiliation" (or any associated derivation of the same) cannot be found within the four corners of the federal statutory provision governing adjustments of status and the adjudication of the same, see 8 U.S.C. § 1255(a), rendering importation of the INA's specific statutory definition of the term into the adjustment context odd.  This context was particularly important to the Supreme Court in Bridges, as it identified the fact that its analysis arose out of the *deportation* context as important to the judicial gloss that it was placing on the INA's specific statutory definition of "affiliated":

> [I]t must be remembered that although deportation technically is not criminal punishment . . . it may nevertheless visit as great as the deprivation of the right to pursue a vocation or a calling. . . . We cannot assume that Congress meant to employ the term "affiliation" in a broad, fluid sense which would visit such hardship on an alien for slight or insubstantial reasons.

Bridges, 326 U.S. at 147; see id. at 149 (providing that "where the fate of a human being is at stake," the evidence of putative affiliation "may not be left to conjecture").  Indeed, much of the extremely limited modern citation of Bridges is generally for this unremarkable proposition –

*i.e.*, that when construing statutory terms in the context or deportation or removal, courts should be cognizant of the harsh effects that could follow.  See, e.g., <u>Landon v. Plasencia</u>, 459 U.S. 21, 32-33 (1982); <u>Lewis v. Chertoff</u>, 194 Fed. Appx. 1, 3 (2d Cir. 2006); <u>Sawak v. INS</u>, 900 F.2d 667, 671-72 (3d Cir. 1990).  But here, the term in question arises out of a completely different context, one in which an alien was seeking a significant immigration *benefit* from the United States, which obviates the concerns that animated the <u>Bridges</u> Court's construction.

As such, this Court should utilize the same generic dictionary definition employed by USCIS in its final administrative decision and its opening memorandum in construing the term "affiliated."

2. Even were this Court to construe the term "affiliated" consistent with its statutory definition, however, Congress abrogated the <u>Bridges</u> Court's legal construction of that definition when it subsequently promulgated the INA in 1952.  Put simply, there are differences between the statutory language at issue in <u>Bridges</u> and that which Congress promulgated through the INA.  Viewing the statutes side-by-side puts these differences in stark relief:

> [T]he giving, loaning or promising of money or any thing of value to any organization, association, society, or group of the character above described shall constitute affiliation therewith; but nothing in this paragraph shall be taken as an exclusive definition of . . . affiliation.

8 U.S.C. § 137(f) (1945).

> [T]he giving, loaning, or promising *of support* or of money or any other thing of value for any purpose to any organization shall be presumed to constitute affiliation therewith; but nothing in this paragraph shall be construed as an exclusive definition of affiliation.

8 U.S.C. § 1101(e)(2) (2000) (emphasis added).  As plaintiff concedes, Congress amended the pertinent statutory language through the INA to, *inter alia*, add the word "support" to the statutory definition of "affiliation."  <u>Opp. Mem.</u>, at 11.  But plaintiff – in only conclusory fashion and without any supporting authority – nevertheless maintains that "the Supreme Court's

interpretation of the statute [in Bridges] and its definition of affiliation remain good law," Opp. Mem., at 11.

But this conclusion is simply incorrect. At the outset, a widely-identified canon of statutory construction provides that "[w]hen the wording of an amended statute differs in substance from the wording of the statute prior to amendment, we can only conclude that Congress intended the amended statute to have a different meaning," Nalley v. Nalley, 53 F.3d 649, 652 (4th Cir. 1995). And just three years after Congress amended the statutory language through the INA, the BIA held that both Bridges and the Second Circuit decision on which Bridges relied were "no longer applicable because of important changes now contained in the law." In the Matter of J---, 6 I. & N. Dec. 496, 499-500 (BIA 1955). In particular, the BIA held as follows, rejecting the very foundation of the legal construction of "affiliation" that plaintiff asks this Court to adopt here:

> The term "support" now found in the law eliminates the necessary of establishing the existence of "mutual recognition" – the rule [adopted in Bridges] that the organization assisted must have reason to believe that the one assisting it can be depended upon to perform further acts of cooperation. This rule is no longer applicable, for "support" may be a one-way affair; those whose cause is championed do not necessarily have to accept the support . . . .

Id. at 502. Put simply, for purposes of § 1101(e)(2), an alien is considered "affiliated" with a group so long as he or she "extends" *any* "support" to a given organization "for any purpose." Id. To state that this is an easily established threshold is thus a significant understatement.

The BIA's statutory interpretation is entitled to binding deference from this Court. It is well-established that agency interpretations of federal statutes that the particular agency administers are entitled to binding effect in federal court. See Chevron USA, Inc. v. NRDC, Inc., 467 U.S. 837 (1984); see also Hosh v. Lucero, 680 F.3d 375, 378 (4th Cir. 2012) (holding BIA statutory interpretation entitled to binding Chevron deference). In Chevron, the Supreme

Court held that if Congress "has directly spoken to the precise question at issue" and its intent is clear, then "the court, as well as the agency, must give effect to [that] unambiguously expressed intent." Id. at 842-43. But if "the statute is silent or ambiguous with respect to the specific issue," the court must defer to the agency's interpretation if it is "based on a permissible construction of the statute." Id.

There can be little doubt that both prongs of the Chevron framework are met here. First, § 1101(e)(2) is – at best for plaintiff – ambiguous about the meaning of the term "support" that Congress added to the statutory provision that defined "affiliation."[3] And the interpretation offered by the BIA – that the addition of the term "support" eliminates the need for "mutual recognition" before one is considered "affiliated" with an organization – is more than merely "permissible." In short, "Chevron's premise is that it is for agencies, not court, to fill statutory gaps," because such gap-filling exercises "involve[] difficult policy-choices that agencies are better equipped to make than courts." Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Services, 545 U.S. 967, 980, 982 (2005).

3. The generic dictionary definition of the term "affiliation" employed by USCIS in its final administrative decision[4] differs very little from the post-INA statutory definition of the term –

---

[3]Alternatively, given that the BIA utilized dictionary definitions of the term "support" in its interpretative analysis, the statutory text could be considered clear and unequivocal *against* plaintiff's continued reliance on Bridges. And as such, even were this Court not to afford Chevron deference to the BIA's statutory construction of § 1101(e)(2), that construction is undoubtedly correct as a matter of law.

[4]Plaintiff also criticizes USCIS for utilizing a more recent version of Black's Law Dictionary, which, he maintains, employs a different (and broader) definition of "affiliation" than the version in publication at the time of plaintiff's adjustment application. Opp. Mem., at 20. But after articulating a broad and generic definition consistent with the more recent version – "[a]ct or condition of being affiliated, allied, or associated with another person, body, or organization" – this earlier version merely parrots the definition adopted by the Supreme Court in Bridges, which has been overcome by the amended statutory language found in the INA.

both easily encompass plaintiff's own admitted connection with, and assistance on behalf of, IAP at the time in question. As the certified transcript now conclusively reveals,[5] plaintiff *himself* testified as follows with respect to IAP:

> I usually get to help with their events, especially (inaudible) maybe end of 1998, I guess, sometime around that time.
>
> *I used to help – I used to help with their events.* Maybe I helped with the Chicago Chapter at the time before I joined the organization.
>
> . . . .
>
> I used to sit with them. I used to see them. I used to go into the office in I guess maybe '98, maybe '99 . . . But I wasn't like a leader in the organization or any employee in the organization.

Transcript (Dkt. No. 24), at 92-93 (emphasis added); see also id. at 132-33.[6] Leaving aside that "affiliation" does not require employment or leadership in the given organization (even under Bridges's now-defunct formulation), USCIS explained in its opening memorandum that "[i]t is hard to envision how an individual who goes to the effort of actively helping an organization stage a number of its events is not – at the very least – "affiliated" with that organization." Mem., at 21. Plaintiff's only response to this is that, consistent with Bridges, this type of assistance (or support) is insufficient to constitute "affiliation" because there is no evidence of a "working alliance" between plaintiff and IAP at the pertinent time. But – even assuming the applicability of § 1101(e)(2) – a "working alliance" is no longer necessary to establish an

---

[5]It bears mentioning that although some of the words are slightly different, the transcript (filed with this Court simultaneously with the instant reply memorandum) has confirmed the representations made by both parties in their opening and opposition memoranda about the sworn testimony that plaintiff provided to USCIS in June 2015, and that was originally provided to this Court in DVD format.

[6]Notably, plaintiff testified that he did become an employee of IAP in 2000 – after he filed his adjustment of status application, but before his interview on that application in which he was provided the opportunity to amend or update his responses.

"affiliation" with a given organization; instead, an alien need only provide "support" to the organization. There can be little doubt that providing assistance at an organization's events is, at the very least, providing "support" for that organization; in fact, it is impossible to conceive of a reasonable trier of fact that would come to a different conclusion.

Accordingly, USCIS correctly concluded that plaintiff was "affiliated" with IAP, and that plaintiff's omission of IAP from his adjustment of status application constituted a misrepresentation.

### B. PLAINTIFF HAS IDENTIFIED NO DISCOVERY THAT WOULD ALLOW HIM TO DEFEAT SUMMARY JUDGMENT

Plaintiff also reflexively maintains – again without authoritative support – that the issue of whether he was "affiliated" with IAP and thus made a misrepresentation on his adjustment of status application is a question of fact that cannot be addressed on summary judgment, and that this Court should authorize plaintiff to obtain some undefined discovery before adjudicating the question. Both positions are simply without merit.

1. Initially, throughout his opposition memorandum, plaintiff makes several conclusory statements to the effect that his putative "affiliation" with IAP is a "genuine issue of material fact" that should not be resolved on summary judgment. Opp. Mem., at 16-17. Plaintiff, however, can offer no support for this proposition. To be sure, the actual nature and extent of plaintiff's connections with IAP during the relevant time period are factual questions. But whether these foundational facts, which are undisputed here,[7] meet the definition of "affiliation" applicable to plaintiff's previous request for adjustment of status is a question of law that is most

---

[7] As described immediately below, the particular facts representing the nature and extent of plaintiff's connections with IAP are undisputed here, and have been derived exclusively from plaintiff's *own* sworn statements.

certainly amenable to adjudication on summary judgment. In this respect, it bears mentioning that Injeti – in which the Fourth Circuit addressed the same argument advanced here concerning the impact of a misrepresentation during the adjustment of status process on an alien's subsequent eligibility for naturalization – was adjudicated on summary judgment. See Injeti, 737 F.3d at 315. And courts have recognized that questions of whether a given individual's circumstances meet a statutory definition (as plaintiff himself asks this Court to employ) is a question of law for a court to decide. See Hooven-Lewis v. Caldera, 249 F.3d 259, 268 (4th Cir. 2001) ("Whether [plaintiff] meets the definition of the statute . . . is a question of law for a court, not a question of fact for a jury."); see also Daft v. Advent, Inc., 658 F.3d 583, 594 (6th Cir. 2011).[8]

2.  Plaintiff also repeatedly argues that USCIS filed its motion "before either party has had an opportunity to offer testimony or request discovery," and that for this reason alone, USCIS's instant motion should be denied. Opp. Mem., at 17. Although plaintiff offers no authority in support of this position, in the interest of candor, the Federal Rules of Civil Procedure do provide a mechanism through which a litigant can – under certain cabined circumstances – request discovery before a court adjudicates a motion for summary judgment. But pursuant to well-settled Fourth Circuit authority, this mechanism is not available to plaintiff here for a simple reason – USCIS's instant motion is based exclusively on *plaintiff's own sworn statements*, which he cannot now contradict.

---

[8]Indeed, as noted in the introduction to this reply memorandum, even plaintiff himself suggests that despite the fact that he has not filed an affirmative motion seeking the entry of summary judgment in *his* favor, this Court could – on the instant record – rule in his favor on the underlying merits of his instant civil action. Opp. Mem., at 21 ("[A] reasonable trier of fact faced with [plaintiff's] statements and the correct legal definition of affiliation would likely find that [plaintiff] made no misrepresentations when he applied for adjustment of status.").

Federal Rule 56(d) provides that a court may postpone adjudication of a motion for summary judgment "[i]f a non-movant shows by affidavit or declaration that, for specified reasons, *it cannot present facts essential to justify its opposition*." FED. R. CIV. P. 56(d) (emphasis added). The Fourth Circuit has held that although a litigant need not technically tender a formal declaration to invoke this rule, see Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244-45 (4th Cir. 2002), a litigant must detail the discovery that he or she purportedly needs in order properly to oppose summary judgment, see Nguyen v. CNA Corp., 44 F.3d 234, 242 (4th Cir. 1995). This is so because a plaintiff cannot use Federal Rule 56(d) to embark on a discovery "fishing expedition" in the hopes of finding useful material, see Morrow v. Farrell, 187 F. Supp. 2d 548, 551 (D. Md.), aff'd, 50 Fed. Appx. 179 (4th Cir. 2002); rather, relief pursuant to this Federal Rule is only appropriate if the "additional evidence sought . . . "'[is] able to create an issue of material fact sufficient to defeat summary judgment,'" Strag v. Bd. of Trustees, 55 F.3d 943, 954 (4th Cir. 1995); see also Pisano v. Strach, 743 F.3d 927, 931 (4th Cir. 2014) ("[A] court may deny a Rule 56(d) motion when the information sought would not by itself create a genuine issue of material fact sufficient for the non-movant to survive summary judgment.").

Plaintiff's potential request for discovery thus fails for many reasons. In particular, plaintiff has not even cited Federal Rule 56(d), let alone identified with any specificity the type of discovery that he needs to obtain or how that discovery would allow him to defeat summary judgment. There is a good reason that plaintiff has cast his request for discovery in such conclusory terms – it is impossible for him to meet the strictures of Federal Rule 56(d) under these circumstances. It will be recalled that the rule itself contemplates that the information sought through discovery is outside of plaintiff's current possession. But USCIS's instant

motion is premised exclusively upon plaintiff's own connections with IAP during the relevant time, and more particularly, *his own sworn statements* about those connections – information that is particularly within plaintiff's dominion and control.  See Burke v. SUNY, 2012 WL 5986548, at *1 n.1 (N.D.N.Y. Nov. 29, 2012) (denying Federal Rule 56(d) relief when pertinent facts were within plaintiff's dominion and control); see also Melancon v. Cargill, Inc., 2017 WL 2573950, at *2 (E.D. La. June 14, 2017) (same).  Additionally, plaintiff simply cannot offer any "testimony" (or other discovery) in order to contradict *his own sworn statements* about his own involvement with IAP.[9]  See, e.g., Tsyn v. Wells Fargo Advisors, LLC, 2016 WL 612926, at *17 (N.D. Cal. Feb. 16, 2016) (holding that plaintiff "cannot invoke Rule 56(d) in the hope of adducing evidence to contradict her own testimony").  Because he has not identified – and cannot identify – any discovery that would impact the question before the Court, plaintiff cannot obtain any relief from Federal Rule 56(d).

For these reasons, this Court can – and should – proceed to adjudicate the instant action on summary judgment.

## II. PLAINTIFF'S MISREPRESENTATION WAS MATERIAL TO INS'S ADJUDICATION OF HIS ADJUSTMENT OF STATUS APPLICATION

The second and final question of the Injeti analysis asks whether the misrepresentation in question would have been "material" to INS or USCIS's adjudication of the adjustment of status application.  And in this respect, USCIS argued in its opening memorandum that plaintiff's

---

[9] Of course, plaintiff cannot now offer testimony – through declaration or otherwise – that contradicts his prior sworn statements in an effort to avoid the entry of summary judgment.  As the Fourth Circuit has noted, a party "cannot create a dispute about a fact that is contained in deposition testimony by referring to a subsequent affidavit of the deponent contradicting the deponent's prior testimony, for 'it is well-established that a genuine issue of fact is not created where the only issue of fact is to determine which of the two conflicting versions of a party's testimony is correct.'"  In re Family Dollar FLSA Litig., 637 F.3d 508, 512-13 (4th Cir. 2011) (quoting Erwin v. United States, 591 F.3d 313, 325 n.7 (4th Cir. 2010)).

failure to identify his affiliation with IAP in his adjustment application would qualify under *either* of the definitions of "material" provided by the Fourth Circuit in Injeti. USCIS will not repeat these detailed arguments here; rather, it will respectfully refer this Court to that paper. Mem., at 22-25. Put simply, given the Boim lawsuit (including the evidence revealed and the judicial findings of fact entered in that civil action concerning the connections between IAP and Hamas), knowledge of plaintiff's affiliation with IAP would have "'a natural tendency to *influence* the decision[] of [immigration officials],'" or "tend[] to *shut off a line of inquiry* which is relevant to the alien's eligibility." Injeti, 737 F.3d at 316-17 (quoting Kungys v. United States, 485 U.S. 759, 772 (1988) (emphasis added)); Matter of Kai Hing Hui, 15 I. & N. Dec. 288, 289 (BIA 1975) (emphasis added)).

Plaintiff's opposition memorandum only offers a half-hearted retort to this reasoning; indeed, he devotes the vast majority of his discussion of "materiality" to his *current* personal involvement in the Boim litigation. Opp. Mem., at 21-24. The only apposite statement plaintiff offers on this score is the following:

> [D]espite the government's recitation of facts regarding the Boim lawsuit, [] USCIS has not argued that [IAP] has provided material support to a terrorist organization, nor has the government raised any terrorism related inadmissibility grounds to deny [plaintiff's] application for naturalization. This conclusion belies the government's position . . . that an association with IAP would have had a natural tendency to influence USCIS . . . ."

Id. at 24. Plaintiff's position is in direct conflict with not only the undisputed record, but also with the manner by which the Fourth Circuit defined "materiality" in Injeti. Initially, both the District Court and the Seventh Circuit in Boim explicitly found, as a matter of fact, that IAP had provided significant financial and other support to Hamas, a designated terrorist organization. And plaintiff has here conceded that such evidence was uncovered and credited in, *inter alia*, the Boim litigation by failing to dispute USCIS's recitation of those facts in its opposition

memorandum.  See LOC. CIV. R. 56(B).  Compare Mem., at 10-14 with Opp. Mem., at 14-15.
Moreover, as the Fourth Circuit held in Injeti, the omitted information need not have *required*
denial of the adjustment application to demonstrate materiality – all that is necessary is that it
would have had a "natural tendency to *influence*" INS officials.  See Injeti, 737 F.3d at 316
("[F]inding that a misrepresentation is material does not require concluding that it necessarily
would have changed the relevant decision.").  Finally, regardless of whether plaintiff's affiliation
with IAP would have rendered him inadmissible to the United States, plaintiff here significantly
discounts (indeed, outright ignores) the reality that adjustment of status is ultimately a
discretionary decision.  See 8 U.S.C. § 1255(a).  One can hardly doubt that knowledge that
plaintiff was affiliated with an organization like IAP would at the least "influence" INS's
decision whether to exercise that statutory discretion in plaintiff's favor.  Mem., at 25 ("If any
information would have a "natural tendency" to influence the exercise of that discretion, it would
be plaintiff's connection to an organization such as IAP, which upon "deeper inquiry," would
have been revealed to have connections to a designated terrorist organization.").

Plaintiff also importantly fails even to mention the *second* part of Injeti's materiality
definition – *i.e.*, that the misrepresentation "shut off a line of inquiry" relevant to the agency
adjudication of the relevant application.  Injeti, 737 F.3d at 317.  For similar reasons to those
identified above, there can be little doubt that plaintiff's affiliation with IAP (and IAP itself)
would have been a relevant line of inquiry with respect to INS's adjudication of the adjustment
application, and plaintiff's misrepresentation prevented INS from exploring those connections
before rendering its discretionary decision.

# CONCLUSION

For the reasons stated above, and in USCIS's opening memorandum, this Court should enter summary judgment in favor of USCIS.

///

///

                                                          Respectfully submitted,

                                                          DANA J. BOENTE
                                                          UNITED STATES ATTORNEY

By: _____/s/_____
                                                          DENNIS C. BARGHAAN, JR.
                                                          Assistant U.S. Attorney
                                                          2100 Jamieson Avenue
                                                          Alexandria, Virginia 22314
                                                          Telephone: (703) 299-3891
                                                          Fax:       (703) 299-3983
                                                          Email:  dennis.barghaan@usdoj.gov

DATE: July 24, 2017                         ATTORNEYS FOR DEFENDANTS

**CERTIFICATE OF SERVICE**

      I hereby certify that on this date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing ("NEF") to the following:

Ashraf Nubani<br>
AWN Point Law, PLLC<br>
2677 Prosperity Avenue, Suite 320<br>
Fairfax, Virginia 22031<br>
Email: awn@awnpointlaw.com

Date: July 24, 2017                       _____/s/_____
                                                                 DENNIS C. BARGHAAN, JR.
                                                                 Assistant U.S. Attorney
                                                                 2100 Jamieson Avenue
                                                                 Alexandria, Virginia 22314
                                                                 Telephone: (703) 299-3891
                                                                 Fax:        (703) 299-3983
                                                                 Email: dennis.barghaan@usdoj.gov

                                                                 ATTORNEYS FOR DEFENDANTS